## McQuigg *versus* Morton.

*Ground-Rent, Rights and Duties of Owner.—How affected by Subdivision of Land.—Legal and Equitable Merger of Ground-Rent —Covenants running with the Land.*

1. A ground-rent is a separate estate from the ownership of the ground, and the owner of the rent is not charged with notice of the subdivision of the land and the rates that are made among the owners.

. 2. If the conveyances, which the purchaser of a ground-rent is bound to take notice of, do not show a merger of the rent estate, with the estate in the ground, they are not as to him legally merged.

3. A., the owner of a lot charged with a ground-rent of $30, conveyed the rear end of it to B., in fee simple, reserving a ground-rent of $26, and covenanting that he, his heirs and assigns, would keep B., his heirs and assigns, clear of the paramount rent. The portion thus conveyed to B. became the property of C. By sundry transfers, the ground-rent of $30, and the legal title to that portion of the lot which remained in A., became vested in D., who subsequently assigned the ground-rent of $30 to E. In an action by E. against C., to recover a proportionate part of the alleged arrears of the ground-rent of $30 as may be properly chargeable upon that portion of the lot held by C.—*Held*, that, under the covenant, E. was entitled to recover.

ERROR to the Common Pleas of *Philadelphia.*

This was an amicable action of covenant between John S. Morton and Robert McQuigg, terre-tenant of James Henry

[McQuigg *v.* Morton.]

Low, in which the following case was stated for the opinion of the court :—

It is hereby agreed by and between the parties to the above-named suit, which is an action of covenant, brought on the first hereinafter mentioned ground-rent deed, that the following case be stated for the opinion of the court, in the nature of a special verdict :—

Dr. J. Hartshorne and wife, by indenture dated the 27th of February 1834, recorded in Deed Book T. H., No. 14, page 18, granted and conveyed to James Henry Low, a lot of ground on the north side of Wood street, 180 feet from the west side of Sixteenth street, containing in front or breadth on Wood street, 15 feet, and in depth 99 feet, to Carlton street; reserving thereout a ground-rent of thirty dollars per annum, payable half-yearly; for the recovery of alleged arrears of which, this suit is brought.

James Henry Low, the grantee in the above-recited deed mentioned, and his wife, by indenture dated the 29th of March 1848, recorded in Deed Book G. W. C., No. 113, page 350, &c., granted and conveyed the *rear end* of said lot, to wit, a lot fronting on Carlton street, 15 feet in width and 58 feet 4 inches in depth, unto William R. T. James, in fee, reserving thereout to himself, his heirs and assigns, a yearly ground-rent of twenty-six dollars and a quarter. And in the said indenture is contained the following, viz. : " To have and to hold the said described lot or piece of ground, hereditaments, and premises hereby granted with the appurtenances, unto the said William R. T. James, his heirs, and assigns, to the only proper use and behoof of the said William R. T. James, his heirs and assigns for ever : *Freed and discharged from the payment of the whole or any part of the said paramount yearly rent-charge of thirty dollars, which the said James Henry Low, for himself, his heirs, executors, administrators, and assigns, hereby covenants and agrees to pay and discharge when and as the same shall hereafter become due and payable, or to extinguish the same, and to save and keep harmless the said William R. T. James, his heirs and assigns, from any payment or distraint on account thereof.*"

The title to the said lot fronting on Carlton street, by sundry mesne conveyances, has become vested in Robert McQuigg, who holds it under the said conveyance from James Henry Low to William R. T. James.

In 1835, Dr. J. Hartshorne and wife assigned the said ground-rent of $30 per annum (reserved out of the lot conveyed to James Henry Low in 1834), to Lewis Gebhard, which said assignment is recorded in Deed Book A. M., No. 61, page 642.

In 1849, the said ground-rent was sold by the sheriff, as the property of the said Lewis B. Gebhard, and conveyed to Anna

[McQuigg v. Morton.]

S. Collins, by deed recorded in District Court, Book V., page 284.

In 1851, Anna S. Collins conveyed said ground-rent to William C. Longstreth, by deed recorded in Deed Book G. W. C., No. 123, page 410.

In 1849, James Henry Low died intestate, seised of the remaining portion of the lot fronting on Wood street (having conveyed the Carlton street front to William R. T. James, as above stated), said portion being 15 feet wide on Wood street, and 41 feet 8 inches in depth, and being also part of the original lot subject to said ground-rent of $30 per annum.

Low's personal estate being insufficient for the payment of his debts, his administrators, in February 1852, petitioned the Orphans' Court for an order to sell the real estate of the said decedent, for the payment of his debts, which was granted, and the said lot on Wood street, 15 feet by 41 feet 8 inches, was sold at public sale, under said order, by Thomas & Sons, auctioneers; and at said sale was purchased by the said William C. Longstreth, who, at the time of said purchase, was the owner of the said paramount ground-rent of $30 per annum. The deed to William C. Longstreth, for the said lot, so by him purchased at Orphans' Court sale, is dated April 2d 1852, and recorded in Deed Book T. H., No. 14, page 185, &c.

Subsequently, to wit, in 1858, William C. Longstreth assigned the said ground-rent of $30 per annum, to John S. Morton, the present plaintiff, by deed recorded in Deed Book A. D. B., No. 45, page 113.

All the deeds and assignments hereinbefore referred to, are to be taken and considered as a part of this case stated, as if they were hereunto annexed.

This suit is brought to recover such a proportionate part of alleged arrears of the said ground-rent of $30 per annum, as may be properly chargeable upon, and payable out of, the said lot fronting on Carlton street, which was, in 1848, conveyed by James Henry Low to William R. T. James, under the covenants hereinbefore recited.

It is agreed that William C. Longstreth, being the owner in fee of the said paramount ground-rent of $30 per annum, became also at the same time the owner in fee, by purchase at Orphans' Court sale, in the manner hereinbefore stated, of all that portion of the original lot fronting on Wood street, which had been retained by the said James Henry Low, when, in 1848, the said Low had conveyed the rear end of the same lot to the said William R. T. James, under the covenants hereinbefore recited; and that the title of the said William C. Longstreth to the said lot on Wood street, is derived from and through the said James Henry Low, subsequently to the said conveyance by Low to Wil-

3 Wr.—3

liam R. T. James, and that the title of the present defendant is
derived from the said William R. T. James.

If the court are of the opinion that the plaintiff is entitled to
recover from the present defendant, who is the owner of the said
lot fronting on Carlton street (conveyed by James Henry Low
to William R. T. James, as aforesaid), a proportionate part of
the said paramount rent of $30 per annum, then judgment is to
be entered for the plaintiff, and the amount thereof to be deter-
mined by a jury, if not agreed upon by counsel, within thirty
days after judgment.    But if the court are of opinion that the
plaintiff is not entitled so to recover, the judgment is to be entered
for defendant; the costs to follow the judgment, and both parties
respectively reserving the right to sue out a writ of error therein.

The court below, without delivering a formal opinion, entered
judgment for the plaintiff on the case stated.    The defendant
thereupon sued out this writ, and assigned for error here that
the court below erred in entering judgment for plaintiff on the
case stated.

*A. S. Letchworth*, for plaintiff in error.—The object of the
suit below was to compel McQuigg, the plaintiff in error (who
was defendant below), to pay a part of the rent of $30 per
annum, which was originally reserved, on the conveyance of
the whole lot by Dr. Hartshorne to Low.    This rent is alleged
to be six years in arrear.    The present plaintiff is the owner
in fee of the Carlton street lot, by virtue of sundry mesne con-
veyances from James, the original grantee of that lot.    Low, being
seised of the whole lot, subject to the said ground-rent, sold
the Carlton street end of it to James, and in the deed from Low
to James is contained the *habendum*.

The defendant in error, the plaintiff below, claims to be the
owner of the said rent of $30 per annum, by virtue of an assign-
ment thereof to him by William C. Longstreth, made in 1858,
shortly before the commencement of this suit.    Longstreth
had purchased the rent from Anna S. Collins, in 1851, and
while he was the owner of it in fee, he also purchased at a
judicial sale the lot on Wood street, which was sold as the pro-
perty of James Henry Low.    The rent which is sued for, is the
rent which has accrued (if it accrued at all) for the six years
during which Longstreth was the owner of the Wood street lot,
and prior to his assignment of the rent to the plaintiff below.
During the entire period for which rent is claimed, Longstreth
was the owner of both the lot on Wood street and of the rent
(if there was any) issuing out of it.

The plaintiff in error submits, in the first place, that there
was an extinguishment by merger of the rent, when Longstreth
became the owner in fee of the Wood street lot.    If the ground-

rent were a *rent-charge*, and not a rent service, there would be no question that it would not be apportionable, and therefore that it would be extinguished; but inasmuch as a ground-rent in Pennsylvania is decided to be a *rent service*, which is apportionable by law, the plaintiff below claims that there is in this case no merger, except as to the Wood street lot; and this would, perhaps, have been the case, but for Low's covenant to extinguish, and to indemnify and save harmless, James, his heirs and assigns, from any payment or distraint on account thereof. The intention of Low, in making this covenant, must have been to charge his Wood street lot with the whole rent, for in no other way, except by absolute payment, could his covenant be made available for the exoneration of the lot conveyed to James; so that as between James and his heirs and assigns, and Low and his heirs and assigns, the rent was, by that covenant, contracted in its lien to the Wood street lot. Hartshorne and his grantees, owners of the rent, so long as they merely held the rent, may not have been bound by this covenant; but if they had distrained for rent in arrear on the Wood street lot, and Low, or his assigns, had been thereby compelled to pay the whole of such arrears, neither he nor they could have had contribution from James or his assigns. The effect of the covenant to James, was to charge the whole of the rent on the Wood street lot; and if Low, in his lifetime, had, by any means, become the owner in fee of the said rent, it seems that by force of his covenant, the whole rent would, *eo instanti*, have merged and become extinguished; nor could it ever afterwards, by any act of his, have been revived, so as to bind the Carlton street lot, without the consent of the owner. If the purchase by Low, of the rent, would have produced this effect, it is submitted, that the union of Low's title to the lot, with the title to the ground-rent, taking place in the person of Longstreth, must inevitably have produced the same effect, for it is the rent which is extinguished by the merger, leaving only the fee of the ground, and that was affected by Low's covenant, and thereby charged with the whole rent.

It is alleged that there can have been no merger in this case, because the covenant of Low to James is not a real covenant, which runs with Low's lot, but a merely personal one, which binds only Low and his personal representatives. This, however, is not the case. The covenant is made expressly to bind the covenantor, his heirs, executors, administrators, and *assigns*. It is plainly the intention to be gathered from the whole instrument in which it is contained, to charge the whole rent upon the remaining lot on Wood street, and as it relates expressly to the ground-rent, which is the common burden of both lots, and which Low, and his heirs and assigns, were, at all events, bound to pay, there would seem to arise out of that relation, some

degree of privity of interest or of estate, between the cove-
nantor and covenantee; from which it is necessarily to be in-
ferred that the covenant is a real one; that the benefit of it ran
with the Carlton street lot, and the burden of it with the Wood
street lot.  Even a slight degree of privity of estate, or of
interest, is sufficient to take a case out of the doubtful rule of
the common law, that, except as between landlord and tenant,
the burden of a covenant will not run with the land of the cove-
nantor, although the benefit of it will, with the land of the
grantee.  But this is something more than a covenant: it is in
the nature of a *grant*, for the value of the land which it was
intended to exonerate and protect, was, in a great degree, de-
pendent upon it.  If the land conveyed were not exonerated
from this rent, it was worth very little; and, without such exone-
ration, could not be enjoyed by the grantee in the manner
intended, and for which he had paid a full consideration.  The
case is therefore within the principle upon which the case of
Brewster *v.* Kidgill, 5 Mod. 369, 12 Id. 171, Ld. Raym. 318,
Comb. 424, 426, and 1 Salk. 198, was decided.  That case is
commented on in the note to Spencer's Case, in 1 Smith's Lead.
Cases, ed. 1855, p. 126.  In the case of Holmes *v.* Buckley, 1
Abr. Eq. 27, a similar principle is laid down.  See 1 Smith's
Leading Cases 128.  The same principle is recognised in Keppel
*v.* Bailey, 2 M. & K. 517; Scott *v.* Burton, 2 Ash. 324.  So also
in Hills *v.* Miller, 3 Paige 256; and The Trustees of Watertown
*v.* Cowen, 4 Id. 510.

The present case is very analogous to those above cited; and
the covenant of Low is equivalent to the imposition on his Wood
street lot, of a pecuniary burden, equal to the proportionate
part of the rent, from which the Carlton street lot was to be
exonerated.  In no other way can the covenant, to save that lot
from all distraint on account of the rent, be rendered available;
and it follows that that covenant, as well as the one to pay and
extinguish, are real covenants, which run, as to their burden,
with the lot of Low, if Low had the power to charge them upon
it.  That he had this power is plain, from the cases above re-
ferred to.  To deny it, would be to deny that a man could grant
a rent, or a right of way, or a watercourse, or other easement,
out of land which he held in fee simple.  The existence of such
a power is necessary to that complete dominion which every man
has over his own property.  If this covenant did, whether as a
simple covenant or as a grant, run with Low's lot, it follows that
the whole rent was merged and extinguished, when Longstreth,
being seised of it, purchased Low's lot, which was then charged
with the covenant to extinguish; and if so merged and extin-
guished, then the subsequent alleged assignment of a ground-
rent to Morton, the defendant in error, could not revive it, as

[McQuigg *v*. Morton.]

to the owners of the Carlton street lot, or operate to their injury, by cutting them off from any defence which they could have made, as against Longstreth himself.

But even if it shall be thought that in strict law this covenant would not run with Low's lot, still, in *equity*, Low, and all holding title under him, are estopped by it from claiming any portion of the rent from James, or those holding under him. If Longstreth, being the ground landlord, had distrained upon Low for arrears of rent, could Low have come upon James for contribution? and if Low could not, could any one to whom Low had conveyed the lot? Could Longstreth, after the conveyance to him of Low's lot, have distrained upon himself? It seems abundantly clear, that not being able to do so, he is, in equity, restrained from doing so on the other lot. He voluntarily placed himself in the position of tenant and landlord to the same land; and it is an inflexible rule, that *nemo potest esse dominus et tenens.* It is said that he had no notice of this covenant, and that therefore he is not bound in equity. This, however, is believed not to be the fact, but it is submitted that by the case stated, and the deeds which constitute a part of it, it fully appears that he had full legal notice, and presumptively, that he had actual notice also.

James and his grantees had done everything in their power to give notice. The deed from Low to James, in which was contained this covenant, was recorded long before the Orphans' Court sale, at which Longstreth purchased Low's lot. At that time James, or his grantees, were in the open and actual possession and enjoyment of the Carlton street lot. By the proceedings in the Orphans' Court, by virtue of which Longstreth acquired title, he was informed that it was but a portion of the ground out of which his rent was *apparently* issuing, of which Low had died seised, and which was then being sold to pay Low's debts. In the deed from Low's administrators to him, the lot purchased by him is described as " *being part of a larger lot or piece of ground,*" &c., and as " *extending in length or depth northward forty-six feet, more or less, to land formerly granted to William R. T. James;*" and again as " *bounded on the north by premises formerly granted to William R. T. James.*" The recording of James's deed was notice to all the world, and particularly to the ground landlord, who must be presumed to know who are the tenants of the land out of which his rent issues. This deed would have appeared upon the usual conveyance searches against Low, whose title Longstreth was buying, if he had taken the moderate precaution of making such searches. The open possession of the Carlton street lot by James, or his grantee, the proceedings in the Orphans' Court, and the description of the boundaries, &c., of the lot in his deed, were either

[McQuigg *v.* Morton.]

of them circumstances important enough to put any one upon inquiry, and were altogether so strong as not to be overlooked by anything short of the most reckless imprudence, which the law never presumes, and will not protect. If Longstreth had made any, even the slightest inquiry, he must have been informed of the deed from Low to James, and of the covenant which it contained : Epley *v.* Hill, 7 Casey 336 ; Jaques *v.* Weeks, 7 Barr 267 ; Hood *v.* Fahnestock, 1 Id. 447 ; Sergeant *v.* Ingersoll, 3 Harris 343 ; 7 Barr 340. Longstreth then had full legal notice of the existence of this covenant when he purchased Low's lot at the Orphans' Court sale ; and the fact that he brought no suit for arrears during the next six years, is strong presumptive evidence that he had actual notice of the covenant, and acquiesced in its legal and equitable effects. If he had either the legal or actual notice of the covenant, he is *in equity* bound by it, irrespective of the question of *merger*, and if bound, then he is estopped from claiming any rent from the owners of the lot protected by that covenant.

The case of the plaintiff in error is like that of a person who has purchased in fee for a *full consideration*, a portion of a larger piece of land, which is bound by a mortgage, a judgment, or other lien. Such a person has an equitable right to compel the mortgagee, or other owner of the encumbrance, to proceed in the first instance against the remaining land of the mortgagor, or encumbrancer, and to exhaust his remedy against it, before he can come upon the portion so purchased. A ground-rent differs from a mortgage, a judgment, or other mere lien, inasmuch as it is an hereditament which binds equally every portion of the land out of which it issues.

But a *covenant* by the owner of the ground, like the one in question, completely annuls and does away with that difference, by expressly charging the whole rent upon a particular part of the ground ; and there can be no reason why equity should not protect one who has purchased a part of the land which is bound by a ground-rent, under such a covenant, to as great an extent as if he had purchased a part of the land bound by a mortgage, or other lien, under a similar covenant. The law in Pennsylvania, in regard to mortgages and other liens, is well settled. The mortgagor, or lien-creditor, is compelled to go first upon that portion of the land which remains in the grantor, and if that be not sufficient, then only for the deficiency upon the portion sold, or, if several portions have been sold, then upon such portions, severally, in the inverse order as to the time at which they were sold : Carpenter *v.* Koons, 8 Harris 226 ; Dunn *v.* Olney, 2 Id. 219. See also, on this point, Nailor *v.* Stanley, 10 S. & R. 455 ; Cowden's Estate. 1 Barr 267 ; Mevey's Appeal, 4 Id. 80 ; Fluck *v.* Replogle, 1 Harris 407.

[McQuigg *v.* Morton.]

If, then, this covenant had been to extinguish a mortgage, or to satisfy a judgment, or any other lien, the law is too well settled to be shaken, that the present defendant would have been, in equity, protected by it; at least until the plaintiff below had first exhausted all his remedy against the Wood street lot; and if, *by his own act,* he had deprived himself of his remedy against that lot, he would necessarily also be deprived of all claim against the Carlton street lot; and no valid reason is perceived why, under the peculiar covenant in the present case, the same equitable rule should not be applied to a ground-rent. If it does apply to a ground-rent, then the judgment of the court below was erroneous, and should have been for the defendant, the present plaintiff in error.

*S. Henry Norris* and *E. Spencer Miller.*—The object of this suit is to ascertain whether the Carlton street lot is to bear its part of the paramount rent. The liability of the Wood street lot is not in question.

If no peculiar circumstance existed here, it is clear that Hartshorne, and those claiming the paramount rent under him, were not affected by any covenant that might be made by Low with his sub-tenants.

The only peculiar fact here is, that, after Low's covenant with James, Longstreth became the owner of the Wood street lot, and at the same time of the paramount rent. And we understand the defendant to allege that Low's covenant to exonerate the Carlton street lot ran with the Wood street lot; that Longstreth, when he bought the latter, assumed Low's covenant; that if Low had bought the paramount rent, he could have collected no part of it from the Carlton street lot, and that therefore Longstreth could not have done it; that, in other words, as against Longstreth, the only part charged with the paramount rent was the Wood street lot; and that when he became the common owner of that and the rent, there was a merger, which destroyed the rent and prevented its being ever after assigned.

Our allegations are expressed by four simple propositions, viz. :—

I. The covenant to exonerate the Carlton street lot ran with the ground-rent, which was the consideration of that covenant.

This rent was the consideration of the covenant. James could have refused to pay, if he was obliged to pay a part of the paramount rent to Hartshorne. This was the security of James, and continued to be of his grantee. It was a perfect security. There can be no doubt, under the cases, that the covenant ran with this rent and the accompanying reversion. Every purchaser of this rent had full notice on the deeds in his chain of title of the right of the owner of the Carlton street lot, viz., to refuse to pay

[McQuigg *v.* Morton.]

the $26.25 unless he was indemnified against the paramount rent. Between the owner of this rent of $26.25 and the owner of the Carlton street lot, there was, clearly, that priority of estate which made a case for the running of the covenant. The common law which held that the benefit and burden of a covenant did not run with a reversion, has never been law here : Streaper *v.* Fisher, 1 Rawle 155; Miles *v.* St. Mary's Church, 1 Wh. 229 ; Scott *v.* Lent, 7 Pet. 605 ; Act of 25th April 1850, § 8.

This shows that there is no hardship in allowing the plaintiff to recover. The owner of the Carlton street lot has a double remedy ; first, his action against Low on his personal covenant ; second, his right as against the owner of the rent of $26.25 to retain sufficient of it to pay off his proportion of the paramount rent.

And the ones who suffer are either Low, who made the difficulty, or the owner of the rent of $26.25, who bought it with full notice of his danger.

The defendant was bound by the simplest rules of prudence to decline to pay his rent of $26.25, before the paramount rent was paid, and it nowhere appears that he has not done so.

II. The covenant made by Low did not run with the Wood street lot.

A covenant made by a grantor of one lot in favour of his grantee, cannot be made to run with another lot.

There is no privity of estate between the owners of two different lots, though they claim under the same grantor, and privity of estate is necessary to the running of covenants with land : Taylor *v.* Owen, 2 Blackford 301 ; Hurd *v.* Curtis, 19 Pet. 459 Smith's Leading Cases, 142, note (ed. of 1855.)

The cases mentioned by the American annotator, in which, though such covenants could not run with the land, courts of equity considered a burden upon one lot as part of the *grant* of another lot, were all cases of *easements*, none of them of pecuniary burdens, or obligations to exonerate from the payment of money. They were decided on grounds of equitable estoppel. Of course they do not apply where no easement or matter of grant is in question, or in favour of one who is so fully protected by the rights which we have shown to exist under our first head, as the owner of the Carlton street lot appears to be.

To suppose that the purchaser of the rent of $26.25 has any remedy against the Wood street lot, in case his tenant refuses to pay, is of course impossible, and his tenant's remedy we have already mentioned. He can decline to pay till the paramount rent is paid.

III. If the covenant could run against the Wood street lot, it could not so run against one who had no notice of it.

[McQuigg v. Morton.]

Longstreth had no notice of the covenant. A purchaser of one lot is not affected with notice of what is contained in a deed from the same grantor for another lot: Boggs v. Varner, 6 W. & S. 469; Keller v. Nutz, 5 S. & R. 246; Meals v. Brandon, 4 Harris 225. This purchase at a judicial sale makes him still stronger.

If he had no notice of Low's covenant when he bought the Wood street lot, he certainly had none when he bought the paramount rent. In the title-deeds of that, the covenant does not appear.

If there were a merger therefore, at all, it was only a merger of so much of the rent as is apportionable to the Wood street lot.

But where no third person is injured, merger may be suspended or prevented by intention: Dougherty v. Jack, 5 Watts 456; Atwater v. Lloyd, 3 Pa. Law J. 232; Richard v. Ayres, 1 W. & S. 487; Moore v. Harrisburg Bank, 8 Watts 149; Helmbold v. Man, 4 Whart. 410; Ingersoll v. Sergeant, 1 Id. 357.

In the merger of the Wood street portion of the rent, no one was interested. Longstreth's conveyance to Morton of the entire rent, shows that he intended to permit no merger, and prevents him from alleging a merger. But, as to the proportion of the paramount rent chargable upon the Carlton street lot, no merger can be alleged if we are right in the views which we have taken.

The plaintiff in error is under an entire mistake in his views of what amounts to notice.

IV. Morton stands on higher ground as to notice, even than Longstreth. He is simply assignee of a rent of $30, standing in Hartshorn's shoes, unaffected by any subletting or covenant by Hartshorn's ground-tenant, or those claiming under him. This is clear from the cases before cited.

The only unusual fact of which he could have notice, was, that his assignor Longstreth owned part of the land. Perhaps on the ground that when a man buys a rent, he is presumed to know who his tenants in possession are, he may be charged with notice of that fact. But this fact could only be important to Morton, as bearing upon a merger of the Wood street portion of the rent, and when he learned or knew that a man who sold him an entire rent could not allege a merger of part of it, by his own act and in his own favour, Longstreth's ownership of the Wood street lot ceased to be important to Morton.

The knowledge that Longstreth was the tenant in possession of part of the land, affected by the paramount rent, which we admit he may be charged with, did not affect Morton with a knowledge of all that was recited in Longstreth's title-deed, much less with what was in James's title-deed.

[McQuigg *v.* Morton.]

The cases of Nailor *v.* Stanley, Cowden's Estate, &c., are cited by the plaintiff in error. Can he find a case in which the owner of a paramount ground-rent is held to be affected in his remedy by equities arising under agreements between owners of different parts of the land? If so, ground-rents will be a much more troublesome and much less valuable kind of property than they are supposed to be. The landlord's right of distress, as well as his right to sell the land, must all be made subservient to these equities of persons with whose contracts he has no priority.

The truth is, the theory of ground-rents, which is that every inch of the land yields its own portion of the rent, forbids such an equity as that contended for. In Ingersoll *v.* Sergeant, 1 Wharton 337, the piling up of all the rent on one part of the land, was held to be impossible.

But the landlord may distrain upon goods of a stranger on the premises, or sue the covenantor who has parted with them entirely; but no case has ever gone the length of compelling him first to exhaust his remedy against the land.

In Brown *v.* Johnson, 4 Rawle 146, it was held, that all the property might be sold to pay the paramount rent, in spite of sales of a part of it, and the vendees of the land need not even be made parties. See, also, Charnley *v.* Hansbury, 1 Harris 16.

But even supposing that the decisions cited do apply to a ground-rent, we are far from admitting that the equities which they establish would be worked out by interfering with the remedy of the creditor. We allege, that subrogation to the remedy after payment to the creditor, is the only mode in which one who has the equity is to enforce it.

The opinion of the court was delivered, May 6th 1861, by

Lowrie, C. J.—The plaintiff below has a very clear legal title to the ground-rent claimed here. If any part of it has become merged, it is not by a legal merger, for it does not come from any fact in the line of the title to the ground-rent of which he is charged by law with notice. The ground-rent is a separate estate from the ownership of the ground; and the owner of the ground-rent is not charged with notice of the subdivisions of the land, and of the rents that are made among the owners of the ground, for his rent issues out of the whole by a title anterior and paramount to these subdivisions. And, in buying a ground-rent, the purchaser is not charged with the duty of seeing who owns the ground, for he buys the rent estate irrespective of the estate in the ground. If the conveyances that he is bound to take notice of do not show the two estates to be merged, they are not legally merged as against him. They do not show it here.

Then is there any equitable merger as to him? We think not. Low owned the whole lot charged with thirty dollars rent,

[McQuigg v. Morton.]

and conveyed the Carlton street end of it to James, charged with twenty-six dollars rent, and covenanted for himself, his heirs, executors, administrators, and assigns, to keep him clear of the paramount rent. Afterwards, Longstreth became the owner of the other end of the lot, and also of the paramount rent. Did Longstreth by this become bound to clear the Carlton street lot from the paramount rent? This depends on the meaning and force of the word *assigns* in the covenant. Assigns of what? Not of the Wood street lot, for that is not mentioned, and the whole rent is not expressly charged upon it. The natural interpretation is that which is presented by the plaintiff below : assigns of the twenty-six dollars rent. It is saying, Give me twenty-six dollars perpetual rent, and I will covenant for myself and my assigns *of that rent*, that you shall not have to pay any part of the paramount rent, and that, if you do have to pay any portion of it, you shall indemnify yourself out of the rent you are now covenanting to pay me.

These views show that the case was rightly decided, and we need not discuss the other aspects of it. No correct mode of treating it can change the result.

                                            Judgment affirmed.